[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case came to this court as a limited contested dissolution. The parties agreed as to custody and visitation, and those orders were set forth on the record prior to the start of the case. At least one of the parties has lived in this state for one year prior to the filing of the complaint; therefore, the court has jurisdiction.
The plaintiff, Kathleen Kopatch, was married to Anthony Kopatch in Bridgeport, Connecticut on September 4, 1965. Her maiden name was Kelly. Four children were born during the course of the marriage to the parties. Kelly Lynn is a minor who was born on December 5, 1974. The parties have resided in Connecticut for at least one year prior to the commencement of CT Page 3998 this action. The parties have alleged that the marriage has broken down irretrievably. Neither the State of Connecticut nor any municipality is contributing to the support of either party.
The court heard the parties testify. The daughter, Kim Kopatch, also testified. The court has reviewed all of the exhibits in the case and the financial affidavits of the parties along with the post age 18 support agreement.
The wife has worked at Friendly's Restaurant for 18 years in one position or another and even presently still does some waitressing. The husband has been gainfully employed throughout the marriage except for a short period of time when he was unemployed. He was unemployed from November of 1990 through February of 1991 when he went to the U.S. Surgical Corporation. It appears at that point the parties' lives changed dramatically.
The husband met and became friendly with a couple and eventually left the home and moved in with them and has severed his relationship with his wife and his children. The parties have conflicting testimony as to what caused this, but it is apparently clear that the husband made a conscious choice to choose his new friends over his family. His son, who is getting married in May of this year, does not want him at the wedding. The husband testified but did not help clarify the reasons for the breakdown as he perceived them on his part.
The parties had a little over $8,000.00 in savings when the husband left. The wife used that money for the son's wedding and as payment of car payments and security for a loan for the daughter's car.
The wife testified that 25 years of the marriage were good. He was a good father. He was a good husband, and he was a regular, hardworking man.
All of the children except the minor child are gainfully employed. This is relevant only to the question of amounts to be paid to the wife. It appears that Kim, Tony and Jody are all working and paying $35.00 per week each for a total of $105.00. The son is moving out shortly and it will be down to $70.00 again. Also, Kim has a child born of her living at the house. It appears that the children should be paying more than $35.00 per week.
The husband testified he left the marital home in September or October of 1991. He testified as to the abuse that he has received from the children since he left. CT Page 3999
The house that the wife presently occupies was purchased 13 or 14 years ago for $38,500.00. A mortgage was placed on the premises of approximately $30,000.00 and $8,500.00 came from joint savings. The husband explained the current loan on the property in the approximate sum of $64,000.00 by indicating that there was a collateral loan that was consolidated to put on the $64,000.00 mortgage. During the course of the time the parties owned the property, the husband received an inheritance, he testified, of about $50,000.00. Some of that money went into improvements to the kitchen. A deck was put on that was done with joint funds. He did a lot of work on the house himself. It is clear, looking at the pictures, however, that the house needs substantial repairs and improvements if the house is going to be sold.
The daughter testified that she tried to talk to her father in order to put the marriage back together again, but it was not able to be done. The husband never said that the wife was at fault for the breakdown of the marriage in those discussions.
This court finds that the cause of the breakdown of the marriage was the husband's leaving and establishing a relationship with friends rather than family. The wife indicated she made efforts to try to save the marriage which the husband rejected.
The court has taken into consideration all the criteria set forth in Connecticut General Statutes 46b-81, the assignment of property and transfer of title statute, 46b-82, the alimony statute and 46b-84, the child support statute in additional to all other relevant statutes. Accordingly, the court orders as follows:
1. The court finds that the marriage has broken down irretrievably and there is no hope of reconciliation. The marriage is, therefore, dissolved on the grounds of irretrievable breakdown.
2. Child support is ordered in the amount of $100.00 per week as stipulated to by the parties since the court finds it meets the guidelines and finds no reason to deviate. Pursuant to Connecticut General Statutes 46b-66, the child support may continue until June 25, 1993, which is after the 18th birthday of the daughter. This order may be enforced since it is a written agreement providing for support beyond age 18.
 3. Based on the current earnings of the husband at $430.00 gross and the wife at $363.20 gross and their net weekly CT Page 4000 wages, the court orders the husband to pay to the wife the sum of $25.00 per week alimony until the earliest to occur of the following: the wife dies, the husband dies, the wife remarries or the wife cohabits with an unrelated person within the meaning of the statutes.
4. The parties differ on the value of the marital property located at 358 Windsor Avenue, Stratford, Connecticut. The net equity for the premises at one half share as shown on the husband's affidavit is $40,000.00, and on the wife's affidavit it is $48,000.00. The property is ordered to be placed for sale in September of 1993, after the daughter's wedding. The wife shall control all of the arrangements concerning the listing and all of the other incidentals necessary to place the premises on the market for sale. The parties shall divide the net proceeds twenty-five (25%) per cent to the husband and seventy-five (75%) per cent to the wife. Net proceeds shall be the sales price less the mortgage payoff, less a brokerage commission, if any, less real estate conveyance tax, less attorney's fees for the sale, and less other ordinary expenses incurred in the sale as established by the Bar Association for the Town of Stratford.
5. Since the wife advanced all of the savings for the benefit of the children, she is to pay out of her share of the net proceeds of the house sale $2,000.00 as a contribution to the husband for those monies expended without his approval.
6. The court orders the husband to pay $750.00 attorney's fees to the wife. They are found to be fair and reasonable under all the circumstances. Said attorney's fees to be paid within sixty (60) days of the date of this judgment or out of the husband's share of the income tax refund, whichever is sooner.
7. The parties are to share equally the joint income tax refund. If the husband has not sooner paid the wife's attorney's fees, he is to pay it out of his share.
8. The husband is to carry Kelly on his medical insurance as long as it is provided to him by his employer. The husband is to pay one half of the unreimbursed medical expenses incurred for the minor child Kelly.
9. A wage execution shall issue.
10. All of the assets of the parties listed on their individual financial affidavits not addressed by this decision shall be the asset of the party listing it. All of the CT Page 4001 furniture, furnishings and personality presently on the premises known as 358 Windsor Avenue, Stratford, Connecticut, shall be the wife's except for those items of the husband's of a personal nature which shall be the husband's. Any dispute under this paragraph shall be referred to Family Relations for mediation and then to the court for further action.
EDWARD R. KARAZIN, JR., JUDGE
[EDITORS' NOTE: THE AGREEMENT IS ELECTRONICALLY NON-TRANSFERRABLE.]